# 7696

### Court of Appeal — Parish of Orleans.

- - - - - - - - -

No. 7696

## Liquidation

### of

### Prudential Savings & Homestead Society.
### vs.
### Victor J. Gondolf

- - - - - - - -

By Finkelspiel, J.

267

Plaintiff filed this suit against defendant, claiming the sum of $592.80, substantially alleging, that prior to March 1st, 1912, defendant made application to plaintiff, a homestead association of the City of New Orleans, for a loan of $600.00 to be secured by vendor's lien and mortgage upon certain real estate tendered plaintiff by defendant, the loan to be made to defendant on the homestead plan, which loan was accepted by defendant upon the security tendered, and the loan was ordered completed in the usual course on the homestead plan, a check being then and there drawn for the amount of said loan, less expenses, $7.20, made payable to the order of defendant, dated March 1, 1912. Said check was delivered by the homestead association to Thomas D. Flynn, its duly elected notary, then in the active practice of his profession, but now a fugitive from justice, his whereabouts being unknown.

Plaintiff alleges that Flynn conspired with defendant to defraud said association and delivered the check over to defendant, and fraudulently endorsed said check without signing the mortgage note for the said sum of $600.00, to be secured by vendor's lien and mortgage upon property tendered by him, the said society, and without otherwise perfecting said loan and said check for said loan was in due course presented for payment through the bank upon which it was drawn, and was paid, and that defendant having received the proceeds of the loan without warrant or right, and without having executed the mortgage to secure said plaintiff, must refund to said society the amount in question.

Defendant excepted to the petition on the ground that same discloses no cause of action, and pleading further, the prescription of one, three and five years to any

claims plaintiff may have against him, alleging finally that the petition is too vague and indefinite.

The case having been heard by his Honor the Judge of Division "E", the late Hon. George H. Theard, the exception of prescription was maintained and suit dismissed.

In due course an appeal was taken and this Court remanded the case, holding substantially that the action was one not only in damages but also *quasi ex contractu*. Subsequently answered was filed, which admits that the application for the loan was made by defendant at the time stated, and for the amount claimed; admits further that the check was delivered to the notary of the said association, Thomas D. Flynn, by plaintiff, but denies that he, plaintiffxdefendant, in any manner conspired with said notary to defraud plaintiff; denying that he fraudulently endorsed said check or was in any wise responsible for the failure to complete the transaction in question or that the check was presented to the bank upon which it was drawn, or collected by him; denies that he received any part of the proceeds of said loan, but on the contrary avers that on the 15th of October, 1911, he agreed to purchase from one J. A. Hardin property on Philip Street in this City for the sum of $725.00; that he made this agreement through one N. J. Cleai, a real estate dealer in this City, and deposited 10 per cent of the purchase price to bind said sale, and subsequently applied to plaintiff for the loan in question; at their request and instance he went to Flynn, the notary's office, to complete this transaction; he further avers that Notary Flynn in such capacity was the notary of said association and handed him, the defendant, various documents and papers to be signed which he, Flynn, stated were necessary; that

in good faith defendant complied with Flynn's instructions, as such notary, who informed him, the defendant, the vendor of the property, Hardin, not then having appeared at his office to sign the act of sale, and being unable to be present, he, Flynn, requested that defendant endorse the check and that, he, Flynn Notary, would subsequently complete the transaction. That the said Flynn then and there requested defendant to deposit, as the notary of said association and in his capacity as such, he not only being the notary and agent of the association, but at the time one of the members of the Board of Directors, the sum of $70.00, which amount the said notary represented was for the purpose of defraying certain expenses contingent to said transaction and to make up whatever difference there was between the amount of the association's check and the purchase price of said property, taking into consideration the 10 per cent deposited with the said real estate agent, Clesi.

On the trial of the case plaintiff offered the check sued upon, together with the endorsement of defendant, in evidence. The check endorsed read, "Vic. J. Gondolf — Deposit, Thomas D. Flynn, Attorney, through New Orleans Clearing House March 4, 1913, Bank of Orleans, Receiving Teller".

Defendant then in his own behalf was the only witness who testified in this cause and he stated that he had purchased this property through Clesi, agent, for $725.00; that he deposited 10 per cent with said agent and made application to plaintiff for a loan of $600.00 according to the usual manner that homestead associations transact their business, and on page 2 of his testimony, further explaining the transaction, said: "The homestead passed on the loan, said it would go through all right and they

270

notify me later; they did ring me up, that is, Mr. Flynn did, and he told me to come to his office, that everything was ready for the act of sale to be passed. I went to his office, sat down, and about a half an hour afterwards he told me, Harding would be in in a little while. I waited and finally Flynn said that, "If you have any business to attend to today, you can go and attend to it. All that is necessary for you to do is to sign these papers and go. We don't need you at all. When Hardin comes in, the act will be passed all right." He then handed me two or three papers to sign, which I signed, and left thinking everything all right."

"Q- Is this the check Flynn handed you to sign?  A- Yes sir.

"Q- Is this your endorsement?  A- Yes sir.

"Q- What else was on the back of the check?

"A- Thomas Flynn, Attorney. Deposit Thomas Flynn.  He handed me two or three papers to sign in his office and I signed them.  He then told me to go and attend to my business.

"Q- Did you ever get the proceeds of this check?  A- No sir."

He goes on to testify and states: "Flynn was to have paid Hardin for the property, then transfer it to the association", and this is about the substance of the testimony contained in this record, and the question presents itself from all the foregoing facts, who has to bear the loss?

The answer to the appeal filed in this case praying for an amendment of the judgment in favor of the defendant for $70.00, on his reconventional demand, which amount was paid by defendant to his agent and deposited with Notary Flynn, cannot be allowed. We do not think this claim just or that plaintiff should suffer this loss.  This loss must be borne by defendant, and in our opinion plaintiff is in no wise responsible therefor.

Considering the pleadings together with the evidence and the xxx law applicable to this case, we are satisfied that plaintiff alone must bear the loss and defendant in no wise is responsible therefor. He never received any part of the proceeds of the check or loan, same was never to have gone to him at all, but to Hardin the vendor. That defendant acted on the instructions of Flynn, the duly elected notary and agent of the association, in endorsing the check, and he is not responsible for the notary's acts in not securing properly plaintiff's rights. He is an innocent third party to this transaction, simply following instructions of Flynn, who in our opinion acted as the sole agent of plaintiff, who had trusted and sent him, Flynn, the check in question. Defendant did but what any reasonable man would have done under similar circumstances. He never benefited by the proceeds of this transaction in any manner, shape or form. He had no connection with it, save and except as shown by his answer in his testimony, and whatever acts he did was under the orders and directions of Flynn, the notary, an agent of the company, who had told him so to do, and that was to sign the papers including the endorsement of the check handed him by Flynn, and therefore, to hold defendant responsible in this case we would have to extend the doctrine of responsibility much further than we are willing to do.

The law applicable to this case and the decisions covering it are to be found in 45 La. p. 927, Detriham vs. Lumber Company; "Whatever an agent does within the scope of his authority, is in legal effect the act of his principal, who is entitled to its advantages and is also subject to its liabilities; his duty was to attend to plaintiff's interests under the contract." And Story on Agency, 9th Ed. 505, Sec. 404; "But the responsibility of the principal to third

272

persons is not confined to parties when the contract has
been actually made on his expressed or implied authority.
It extends further and binds the principal in all cases
where the agent isacting within the scope of his usual
employment, or has held out to the public, or to the other
party, as having competent authority, although, in fact,
in the particular instance, exceeded or violated his in-
structions, and acted without authority."

Judgment affirmed.